The Cylindrical Company, Limited v. Commissioner.
Cylindrical Co. v. Commissioner
Docket Nos. 111882, 1949.
United States Tax Court
1944 Tax Ct. Memo LEXIS 360; 3 T.C.M. (CCH) 170; T.C.M. (RIA) 44056; February 25, 1944
*360 John P. Ohl, Esq., for the petitioner. Thomas R. Charshee, Esq., and Bernard J. Long, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This is a consolidated proceeding involving the redetermination of deficiencies in personal holding company surtaxes of $1,531.89, $4,378.35 and $5,615.02 for the years 1938, 1939 and 1940, respectively. The deficiencies were determined as a result of several adjustments, only one of which is contested for each year. The only issue is whether petitioner is entitled to any dividends paid credit in the computation of undistributed net income subject to personal holding company surtax for the taxable years in question. Petitioner filed, its personal holding company surtax returns for the taxable years 1938, 1939 and 1940 with the collector of internal revenue at Baltimore, Maryland. Findings of Fact Petitioner is a personal holding company incorporated under the laws of Newfoundland on or about May 28, 1931, and having its principal office in St. Johns, Newfoundland. It is not a foreign personal holding company as defined by section 331 of the Internal Revenue Code. Petitioner at all times here material had 254 *361 shares of capital stock issued and outstanding of which 251 shares were registered in the name of C. P. M. Jack, Trustee, and 1 each in the name of Claude S. Richardson, A. H. Lang, and W. P. Creagh, its director. C. P. M. Jack resided in Swalcliffe Lea, Banbury, Oxon, England. Petitioner's income was derived from sources both within and without the United States. It owned no United States securities. On December 31, 1937, petitioner had a substantial earned surplus. In each taxable year involved it claimed a dividends paid credit on its personal holding company surtax returns in an amount less than its entire net income for the year but in excess of its net income attributable to United States sources. The amount of gross income applicable to United States sources, the amount applicable to other sources, the ratio of gross income from United States sources to total income, and the amount of dividends paid credit claimed for each taxable year in question are given in the following chart: Ratio of Gross
Income from
Gross Income
Gross income
U.S. Sources
Dividends
Applicable to
Applicable to
to Total
Paid Credit
U.S. Sources
Other Sources
Income
Claimed
1938
$ 6,722.58
$2,424.27
73.5
$3,048
1939
8,895.56
6,548.69
57.6
6,858
1940
11,324.84
1,456.12
88.6
6,858
*362 Respondent disallowed the dividends paid credits so claimed, which represent petitioner's total alleged distributions to its stockholders during its taxable years, in their entirety. As ground for this adjustment in respect of 1938 and 1939 respondent stated in his notice of deficiency, "* * * it is held that you failed to meet the requirements of article 27 (b)-2 of Regulations 101 and section 19.27 (b)-2 of Regulations 103, and, therefore, no dividends paid credit is allowable." The ground given for the 1940 adjustment was "* * * it has not been established that you have fully met the requirements of section 27 of the Internal Revenue Code and the regulations relating thereto with respect to the allowance of the credit." The procedure followed each year in connection with the disbursements giving rise to the claimed dividends paid credit was similar. On December 30, 1938, petitioner's directors declared a dividend of $3,048. By letter dated December 29, 1938, it requested the Bank of Montreal to draw drafts to C.P.M. Jack, Trustee, in the sum of $3,012 and to its three other stockholders in the sum of $12 each. On December 30, 1938, the drafts were drawn debited against petitioner's *363 account in the bank and delivered to petitioner's secretary. The draft payable to C.P.M. Jack, Trustee, was on the same day turned over to Herbert W. Jackson pursuant to a cablegram from Jack authorizing Jackson to accept the check in his behalf as trustee. Jackson immediately sent the check by prepaid mail to Jack in England who acknowledged its receipt, endorsed it to petitioner and returned it to petitioner as a loan to draw interest at 5 percent per annum. Interest was thereafter paid on the loan from the date of its receipt, February 1, 1939. Certain drafts which petitioner caused to be issued in payment of interest on loans by C.P.M. Jack, Trustee, were also endorsed, returned and treated as loans. On December 29, 1939, petitioner's directors declared a dividend of $6,858; petitioner requested the Bank of Montreal to draw a draft payable to C.P.M. Jack, Trustee, in a like sum, petitioner having received mandates from its other stockholders authorizing dividends on their shares to be paid to C.P.M. Jack, Trustee., the draft was drawn, debited against petitioner's account and delivered to petitioner's secretary; it was turned over by him to Herbert W. Jackson who had presented *364 a letter from Jack authorizing Jackson to accept any dividend check issued by petitioner prior to January 1, 1940; and Jackson sent the draft by prepaid mail to Jack in England. The latter acknowledged receipt of the check, endorsed it and returned it to petitioner as a loan to drawn interest at 5 percent per annum. Interest was thereafter paid on the loan from the date of receipt, February 17, 1940. On June 29, 1940, petitioner's directors declared a dividend of $5,080; the Bank of Montreal drew a draft in like sum payable to C.P.M. Jack, Trustee, petitioner having so requested the bank by letter dated the previous day; the draft was debited against petitioner's account and delivered to its secretary, and it was sent to Jack by registered letter. In this letter Jack was advised that petitioner would be pleased to accept the money represented by the draft as a loan if he so desired. Jack did not endorse this draft to petitioner or loan to it the money represented by the draft. On December 30, 1940, petitioner's directors declared a dividend of $1,778; the following day petitioner requested the Bank of Montreal to draw a draft payable to C.P.M. Jack, Trustee, in a like sum; the draft *365 was drawn, debited against petitioner's account, and delivered to petitioner; it was turned over to Herbert W. Jackson who had presented a letter from Jack authorizing Jackson to accept any dividend check issued by petitioner prior to January 1, 1941; and Jackson sent a draft by prepaid mail to Jack in England. Petitioner filed no withholding tax returns with respect to the distributions made to C.P.M. Jack, Trustee. No income tax returns were filed by C.P.M. Jack, Trustee, with the collector of internal revenue at Baltimore for the years 1938, 1939 and 1940, and no tax was paid by Jack to that collector. Opinion The issue is whether petitioner is entitled to a dividends paid credit in the computation of its undistributed net income subject to personal holding company surtax for each of its taxable years 1938, 1939 and 1940. Petitioner declared dividends of $3,048 in 1938 and $6,858 in each of the years 1939 and 1940. It claimed dividends paid credit in such sums, respectively, upon its personal holding company surtax returns for the stated years. By reason of these credits petitioner's returns showed no surtax to be due and none was paid. Respondent determined a deficiency for *366 each year and, in so doing, held that the claimed dividends paid credits should be disallowed in their entirety. The only reason suggested in the notice of deficiency for such disallowance was that the dividends were not paid within the meaning of the applicable sections of the statutes and respondent's regulations. In the following discussion we shall refer only to pertinent sections of the Internal Revenue Code and Regulations 103, since they are identical in all material respects to the analogous sections of the Revenue Act of 1938 and Regulations 101, applicable to the taxable years 1938 and 1939. The surtax on personal holding companies is established by chapter 2, subchapter A of the Internal Revenue Code. Section 504 thereunder defines "Undistributed subchapter A net income," upon which the surtax is based, as subchapter A net income minus the amount of dividends paid credit provided in section 27 (a) without the benefit of paragraphs (3) and (4) thereof and computed without reduction for credit relating to interest on obligations of the United States (petitioner had no such obligations), and minus other items which are not material here. Section 27 (a), disregarding (3) and *367 (4) thereof, in accordance with the requirement of section 504, defines "dividends paid credit" as meaning the sum of (1) the basic surtax credit for such year, computed as provided in subsection (b) and, (2) the dividends carry-over to such year. We are not concerned with a carry-over in this proceeding. Section 27 (b), so far as important here, provides that the "basic surtax credit" means the dividends paid during the taxable year. Hence, in this case, it is manifest that the amount of "dividends paid credit" is to be the same as the amount of the dividends paid during the year. The sections lend themselves to no further meaning. The evidence discloses that petitioner did declare and pay, within the respective years in question, dividends in the same amount as the dividends paid credit claimed. With respect to each dividend, the directors made a formal declaration thereof, a bank draft or drafts were secured, petitioner's bank account was duly debited and the draft payable to C.P.M. Jack, Trustee, which, save for $36 in 1938, represented the entire dividend, was delivered to Jack's appointed agent. In all instances these acts took place before the end of the taxable year. It is *368 clear that petitioner timely placed the dividend distributions beyond its control and, conversely, within the control of the agent of its registered stockholder, C.P.M. Jack, Trustee. Payment has been held evidenced by acts far more equivocal than those performed here. See Musselman Hub-Brake Co. v. Commissioner, 139 Fed. (2d) 65; R. H. Bouligny, Inc., 45 B.T.A. 456; Atlantic Land Co., 43 B.T.A. 74. So far as the question of receipt by an agent is concerned, the Commissioner has ruled, and we think correctly, that the payment of a dividend during the taxable year to the authorized agent of a shareholder will be deemed payment of the dividend to the shareholder during such year. Regulations 103, Sec. 19.27 (b)-2. However, respondent urges that no payment was made within the requirements of the statute because, as he contends, (1) C.P.M. Jack, Trustee, returned the dividend payments to petitioner to be held as a loan, (2) this was done pursuant to a prearranged agreement so to do, (3) the socalled loan was not bona fide, and (4) C.P.M. Jack, Trustee, failed to pay a tax on the dividends *369 received. It is true that Jack did endorse over to petitioner the dividend drafts representing both the 1938 and the 1939 dividends. Moreover, he endorsed drafts representing interest payments on the dividends so turned back to the petitioner. But we are unable to find from the evidence that the procedure was followed pursuant to a binding, prearranged agreement or that the loan was not bona fide. The inferences to be drawn from the evidence are to the contrary. Jack did not return the June 29, 1940 draft although he was invited to do so. Inconsistently with a lack of bona fides, interest was paid on the returned dividends. Furthermore, the drafts, both dividend and interest, actually went beyond petitioner's power of recall. So far as the record discloses, the moneys which they represented were returned, if at all, at Jack's option and then only after several weeks had elapsed from the date the drafts were issued. Such facts clearly distinguish this case from Royal Mfg. Co. v. Commissioner, 139 Fed. (2d) 958, where the stockholders, by written agreement, contracted to donate future dividends to the company and consented that the dividend checks be *370 endorsed over by the company as their agent, which was done. The Court there pointed out that the agreement showed that the company had no intent that the fund represented by the dividend should escape its control and dominion and that it did not in fact do so. On the other hand, the contention under examination is answered by Pacific Grape Products Co., 42 B.T.A. 914. In that case the taxpayer declared a dividend payable to the stockholders on December 31, 1936. Before that date the owners of about 99 percent of the stock endorsed and delivered the previously drawn dividend checks to the taxpayer. Eight small stockholders took the same action during the first three months of the following year (such as was done by C.P.M. Jack, Trustee, here). We denied a dividends paid credit measured by the dividend checks returned prior to December 31, 1936, but as to the others, said: Inasmuch as the evidence shows that certain stockholders did not endorse their dividend checks back to petitioner until after the close of the taxable year, we hold that petitioner must be allowed a dividend paid credit equal to the face amount of those checks, $968.05. In the case *371 of these checks, the liability of petitioner thereon was not extinguished before it arose and accrued, the stockholders could have kept and cashed them, * * *. In the circumstances it is apparent that the mere fact that dividend payments were returned after the close of the taxable year is altogether immaterial to the question of whether payments were made. Nor does the fact, if true, that C.P.M. Jack, Trustee, failed to file a return and pay a tax on the amount of the dividends require the conclusion that no payment thereof was made. While the stockholders' tax treatment of a dividend allegedly paid has sometimes been considered a factor in determining the actuality of payment, such treatment is far from conclusive. If it objectively appears that the stockholder received the dividend, as it does here, it makes no difference, from the dividends paid credit standpoint, that the stockholder failed to report the dividends as part of his taxable income. Valley Lumber Co. of Lodi, 43 B.T.A. 423. We conclude that petitioner paid dividends of $3,048 in 1938 and $6,858 in each of the years 1939 and 1940. Respondent erred in determining that it did not. *372 This disposes of the only issue within the scope of the grounds set forth by respondent as the basis of the deficiencies and also the only issue presented by the pleadings. However, respondent urges as an alternative to the issue thus presented an issue not only not presented by the pleadings but inconsistent with the issue therein presented. We are not warranted on the state of the pleadings to consider such alternative issue and accordingly decline to do so. We hold petitioner entitled to dividends paid credit for each of its taxable years 1938, 1939 and 1940 in the amount claimed in its personal holding company surtax returns for the respective years. Decisions will be entered under Rule 50.